**GUNDERSEN, Plaintiff-Appellee, v. SOUTH EUCLID (City) et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22207.   Decided July 2, 1951.

Davies, Eshner, Johnson & Miller, Cleveland, for plaintiff-appellee.

L. J. McGurk, E. A. Plazer, Cleveland, for defendants-appellants.

**OPINION**

By THOMPSON, J:

This case comes into this Court on appeal on law and fact by the defendant, City of South Euclid, from an injunction granted to plaintiff in the Common Pleas Court, enjoining defendants from collecting certain assessments and reassessments against plaintiff's property which were declared invalid by the trial court. The facts are somewhat involved but, for the purpose of stating the issues in the case and the applicable principles of law, as we see them, it will be unnecessary to recite the numerous allegations of the pleadings.

This action was commenced under date of January 15, 1948, by plaintiff, Gundersen, against the defendants, City of South Euclid, and the Treasurer and Auditor of Cuyahoga County, Ohio. The facts were presented mainly by stipulation in the court below and were submitted on that record in this Court. The admitted facts show that plaintiff is the owner in fee simple of seventeen separate parcels of real estate in South Euclid, each of which is registered under the Torrens Law. Five of the parcels plaintiff purchased at County Auditor's forfeited land sale on April 15, 1947 and twelve he purchased from one Millar who had in turn bought these twelve parcels at County Auditor's forfeited land sale under the same date.

The record shows that before buying any of the properties involved in this action, plaintiff checked the Torrens records as to each parcel at the County Recorder's office and observed that no notations of any assessments or re-assessments appeared upon the records in that office. The facts further show that as long ago as December 3, 1918, with respect to Belvoir Boulevard lots, the City of South Euclid passed an assessing ordinance for sidewalks and on July 20, 1920 for water improvements. In addition, on September 8, 1925, Council passed an assessing ordinance for storm and sanitary sewers applying to all of the lots involved in this action.

An assessment for a Cedar Road storm and sanitary sewer improvement was passed by Council on November 21, 1931; storm, sanitary sewer and water improvements for Acacia, Temblethurst, Langerdale, Laurelhill and Temblett Terrace

parcels were assessed on January 28, 1926 and paving on April 11, 1927. Lighting assessments were passed in 1926 for a five year period applying to all lots in this action and again in 1931 for another five year period. Lighting assessments were again enacted in 1936. All of the foregoing were assessed by Council pursuant to petitions of then property owners along the streets and premises to be improved, with the exception of the lighting assessments for Belvoir Boulevard and Temblett Terrace sewer and water assessments.

No notation of the passage of any of the assessments was ever filed with the County Recorder, except lighting assessments in 1936 and subsequently. All of the special assessments referred to have been delinquent at least since 1932 and all of them apply to some or all of plaintiff's parcels.

It was stipulated in the trial court that in March, 1937, the City of South Euclid passed an ordinance respreading all of the unpaid original assessments under the provisions of §2293-5 (k) GC and following; that no notice thereof was given other than that which appeared at the time in certain local papers; and that on January 16, 1940, all of the unpaid special assessments of the City of South Euclid were merged into a single reassessment ordinance, and that to the total of all the unpaid special assessments was added interest and the costs of the reassessment bonds. At the time of the enactment of the original assessment ordinances above mentioned, one of the provisions of the Ohio Torrens Act in effect since 1913 provided as follows:—

"Section 8572-56. When, in a city, village, township or county, an ordinance, resolution or order is passed or made by a council, board or other authority, to lay out, establish, alter, widen, grade, re-grade, re-locate or construct or repair a highway, road, street, sidewalk, drain or sewer, or to make any other public improvement or to do any work, the whole or a portion of the expense of which will be assessed or levied upon real estate, if any registered land or any land included in an application for registration then pending is affected by the act or proceeding, and liable to such assessment, or if an ordinance or resolution is passed making or levying any such assessments on registered real estate, or certifying to the auditor or other official or board any such assessment to be made or levied on any registered land, the clerk of the board or council passing such ordinance, resolution or order, or issuing such certificate, shall file with the recorder's office a notice of the passage or issuance thereof, giving a list of the lands assessed or to be assessed, and a memorial thereof shall thereupon be noted by the recorder on the register of each certificate of title of such land. Unless there is filed

with the Recorder such notice and a list of lands, registered lands shall not be liable for such assessments. In case of the repeal or nullification otherwise of such ordinance, resolution or order, such clerk or officer or board shall within 5 days thereafter notify the recorder thereof, who shall thereupon cancel such memorial."

The foregoing section of the Ohio General Code, enacted in 1913, continued without substantial change in language until 1933 when the next to the last sentence was amended to read as follows:

"Unless there is filed with the recorder within ninety days after the passage or issuance of such ordinance, resolution or order, such notice or list of lands, registered lands shall not be liable for such assessments."

On April 27, 1937, §8572-56 GC, was repealed in its entirety, and, by the same act, §§8572-25 and 8572-89 GC, were amended so as to include taxes and assessment liens within the exceptions not protected by a Torrens Certificate.

One of the principal claims of plaintiff is based on the language of §8572-56 GC, as in effect until 1937. Plaintiff claims that by virtue of that section, none of the original assessments for improvements against the various parcels now in his possession, and levied prior to the repeal of the section in question, and none of the successive annual installments falling due under said assessments or under any re-assessment of said assessments, either before or after repeal of §8572-56 GC are valid because of the failure of the Clerk of the City of South Euclid to file with the recorder's office a notice of the passage of the various assessment ordinances, and in view of the consequent absence of any notation thereof by the recorder on the register of the certificates of title of the parcels involved.

Defendant, City of South Euclid, disputes this claim of plaintiff, as well as plaintiff's interpretation of §8572-56 GC, and further relies on the respreads and reassessments on the part of the Council of the City of South Euclid in 1937 and 1940.

It is stipulated that the lots subject to this lawsuit were forfeited to the State of Ohio for non-payment of taxes and assessments and that they were sold by the County Auditor. At the time of the forfeited land sale conducted by the County Auditor in 1947 when five of the sublots involved in this action were purchased by plaintiff and the others by Millar, who then in turn sold his acquisitions to plaintiff, the conditions of sale announced as the Auditor's Rules of Sales included the following:

"(d) These parcels are offered and will be sold free of all liability for any arrearages of taxes, assessments, penalties, interest and costs for 1946 and prior tax years, but subject to the taxes for 1947, and to the lien for the unpaid installments of special assessments or re-assessments for 1947 and future tax years, not yet due."

"The above statement is merely a general explanation of the provisions of the statutes as applied to the 1947 Forfeited Land Sale, and is not to be considered as a binding condition of sale in the cases of property registered under the Torrens Law so as to validate a lien for special assessments which otherwise would be held to be unenforcible under certain Supreme Court decisions already rendered."

"Besides the taxes and special assessments for 1947 and thereafter, these parcels are sold subject to such easements, building restrictions or covenants running with the land as were created prior to the time the taxes or assessments, for the non-payment of which the land was forfeited, became due and payable."

At the time of purchase of the five parcels at Auditor's sale, and at the time of purchase from Millar of the other twelve parcels, plaintiff received the usual owner's duplicates of Torrens Certificates of Title evidencing his ownership of the respective parcels. It was stipulated by the parties that the certificates of title contain no memorials of special assessments or lesser estates or liens or encumbrances. Certain restrictions are noted on the certificates of title, applicable to all of plaintiff's lots, which are in a subdivision known as the Belvoir Gardens sub-division. The only restriction conceivably having any importance so far as the present litigation is concerned is No. 9, dealing with "Reservations" as follows:

"The Grantor expressly reserves in the original owners of Belvoir Gardens Subdivision, Fred J. Langer, William H. Temblett, Ernest Reker, Mills G. Clark and Stanlee T. Bates for themselves, their heirs and assigns, the sole right to legislate or grant consents, or install any improvements as storm sewers, sanitary sewers, water mains, street curbing or paving, or to grant consents for the operation of street railways, electric lights, telephone and telegraph pole lines and conduits in and upon any or all of the highways existing, or hereafter created upon which any portion of said premises shall abut, together with the right to grant permission to lay and maintain conduits and lines and poles for carrying electric wires in, through or over the rear 5 feet of said premises; also the only and exclusive right to establish

grades and slopes upon the land herein described and to fix the grade at which any building shall be erected or placed thereon, so that the same shall conform to· a general plan, for the mutual benefit of all purchasers, and the sole right at all times to grant consents or to petition the proper authorities for the installation of any and all improvements, which in their opinion are necessary for the proper development of Belvoir Gardens Subdivision, of which the above described land is a part. The grantee hereby consents to and affirms any agreement that may be entered into between the said original owners, their heirs or assigns, and any authorities, providing for the installation of any of said improvements and the grantee shall be bound together with the lands herein described for the payment of the cost of said improvements hereby waiving all notice with reference to said petition and shall consent to all things or acts which may be necessary · in the matter, hereby granting and ratifying all agreements or acts on the part of the said original owners, or their heirs or assigns in regard thereto."

It may also be noted by the record (page 39) that it was stipulated that the owner's duplicates of certificates of title received by plaintiff as result of the Auditor's Sale, bore language substantially the same as plaintiff's exhibit 2(d). The latter carries the following notation:

"ACT OF MAY 6, 1913, 103 O. L. 914. (Land Registration Law) Section 25.

"Section 25: Every applicant who without fraud on his part receives a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate for value and in good faith, shall hold the same free from all estates and encumbrances except those noted on the certificate and any of the following estates and encumbrances which may be existing:

"First. Such liens, claims or rights arising· or existing under the laws or constitution of the United States as the statutes of this state cannot require to appear of record in the recorder's office.

"Second. Taxes, within six years after they have been en- tered upon the tax duplicates and become due and payable. * * *"

The foregoing language inscribed on plaintiff's duplicate certificates of title is actually copied from §8572-25 GC in its form prior to amendment, effective August 18, 1937. In present form, since its 1937 amendment, the last sentence quoted above reads as follows:

"Second. Taxes and assessments levied by the United States

of America, the State of Ohio, or any taxing district of said state."

Plaintiff's action for injunction and equitable relief was based on the claim that all assessments and reassessments not abated by the Auditor's Sale, representing installments of special assessments and reassessments not due at the time of said sale, are null and void as liens against the seventeen parcels owned by him, by virtue of the failure of the City of South Euclid to file a notice of such assessments with the County Recorder, as provided by §8572-56 GC, in effect until its repeal in entirety on August 18, 1937. Plaintiff in his petition alleged that, despite the fact that said assessments and reassessments were void, the City of South Euclid, if not enjoined, would cause such assessments and reassessments as had not yet become due to be certified to the County Auditor for collection and that the latter, unless restrained, would enter the same on the tax duplicate and place them in the hands of the County Treasurer for collection. Plaintiff's petition prayed that the assessments and reassessments on said premises be declared null and void and that the City of South Euclid, the County Auditor and County Treasurer be enjoined from collection of said assessment and reassessments.

Defendant, the City of South Euclid, by answer alleged that the original owners of the parcels acquired by plaintiff had signed the petitions requesting the installation of the improvements and had asked that the costs be assessed against their abutting properties. Defendants by answer admitted failure to comply with §8572-56 GC, but recited the original assessments and reassessments in 1937 and 1940 and alleged that plaintiff was estopped to complain of the assessments levied and averred that plaintiff had accepted a Torrens Certificate of Title subject to assessments levied by the defendant and consented to by plaintiff's predecessors in title.

The trial court referred the case to a special master who, after hearing, filed findings of fact and conclusions of law. The conclusion of the special master was as follows:

"Therefore, based on the facts of this case and the applicable law, the plaintiff is entitled to an injunction as prayed for except as to assessments for street lighting, which are held to be valid liens on the property involved."

The trial court, pursuant to the special master's report, granted plaintiff's prayer for injunction, except with respect to street lighting assessments which were held to be valid liens on plaintiff's parcels.

On appeal on law and fact to this Court, defendant, City of South Euclid, urges that the plaintiff is not entitled to an

injunction; insists that the trial court misconstrued the law, and argues that lands acquired by plaintiff at Auditor's Sale in 1947, ten years after the repeal of §8572-56 GC, became subject to future installments of taxes not due at the time of the sale, in view of the 1945 amendment of §5762 GC, regardless of whether the assessments were levied prior to 1937 and without compliance with §8572-56 GC. Examination of the pertinent statutes and decisions leads us to the conclusion that the position of defendant appellant, City of South Euclid, is sound.

In reaching this conclusion we recognize that for a period of several years the law in this state was unsettled and confusing both to property owners and to officials of Ohio municipalities, because, under the Ohio statutes, special assessments automatically became liens against unregistered lands, while under the Torrens Act, until the amendment of August 18, 1937, notice to the recorder and affirmative action by him was called for by the statute, in order to affect registered lands. It was not until the decision of **Adams v. Nibbor Realty Co., 57 Abs 241**, decided by this Court on May 8, 1950, subsequent to the filing of the present law suit, that there was any clear indication as to the effect of Auditor's Sales on assessments not yet due in the case of registered lands, where such assessments had been originally levied prior to August 18, 1937. We have reached our decision in this case primarily on the basis of Adams v. Nibbor Realty Company, supra, and §5762 GC as amended on October 11, 1945, with reference to Auditor's Sales, it appearing to us that other Ohio cases decided prior to amendment of the statute in question and cited in the briefs can be of little help in the present determination. **Sec. 5762 GC** referred to, effective Oct. 11, 1945, declared as follows:

"The county auditor on making a sale of a tract of land to any person, under this chapter, shall give such purchaser a certificate thereof. On producing or returning to the county auditor the certificate of sale, the county auditor, on payment to him by the purchaser, his heirs or assigns, of the sum of one dollar and twenty-five cents shall execute and deliver to such purchaser, his heirs, or assigns, a deed therefor, in due form, which deed shall be prima facie evidence of title in the purchaser, his heirs, or assigns. When a tract of land has been duly forfeited to the state and sold agreeably to the provisions of this chapter, the conveyance of such real estate by the county auditor shall extinguish all previous title thereto and invest the purchaser with a new and perfect title, free from all liens and encumbrances, except taxes and installments of special assessments and

reassessments not due at the time of such sale, and except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the non-payment of which the land was forfeited, became due and payable."

Plaintiff's parcels were acquired through Auditor's Sale in April, 1947. At that time §5762 GC as amended, in 1945, governed Auditor's Sales. That statute, by its terms, applied to all Auditor's Sales and was notice to buyers of the nature of the title to be acquired. The important words of this statute bear repetition and we herewith underscore them:

"**When a tract of land has been duly forfeited to the state and sold** agreeably to the provisions of this chapter, **the conveyance of such real estate by the county auditor shall extinguish all previous title thereto and invest the purchaser with a new and perfect title, free from all liens and encumbrances, except taxes and installments of special assessments and reassessments not due at the time of such sale \* \* \*.**"

At the time of the Auditor's Sale in 1947, the decision in the **Adams v. Nibbor Realty Company case, 57 Abs 241** had not been rendered but, in the light of that case, we believe it to be now clear that a purchaser at Auditor's Sale, whether of registered or unregistered lands, buys the property subject to installments of special assessments or reassessments not due at the time of the sale. The Adams case involved special assessments levied by the Village of Parma during the years 1925 to 1930. Parma failed to file with the county recorder notice of the assessment ordinances as required by then §8572-56 GC, and Torrens property in Parma was therefore not affected by installments of assessments falling due prior to April 27, 1937, at least in the absence of circumstances creating what the courts have referred to as an estoppel on the part of the land owner.

In the Adams case, after the repeal of §8572-56 GC, Parma, in 1938, reassessed and respread the unpaid portion of said installments and the remaining future installments over twenty-eight annual payments, commencing with 1938 and ending in 1965. In 1948 the Parma lands involved in the Adams case were sold at Auditor's Sale for delinquent taxes. In the respects cited, the facts of that case are identical with the instant case, since in the present case South Euclid, after the repeal of §8572-56 GC, did exactly what Parma had done. On January 16, 1940, City of South Euclid passed its reassessment ordinance, as we have seen, to include all unpaid original assessments and reassessments. It has been here argued in

behalf of plaintiff, that the original assessments, prior to 1937, never became liens on registered lands within the municipality and that, therefore, the reassessments could not become liens, since, it is said, "the source of the reassessments is in the lien of the original assessments." It is urged that if the assessments were invalid, the reassessments must be likewise, since the latter is merely a renewal of the former. The error in this argument lies in the major premise.

In the Adams case, in answer to the argument of the invalidity of the original assessments prior to 1937 and the consequent invalidity of the reassessment, after repeal of the statute, the court effectively dispelled this claim by pointing out that the original assessments were not invalid but merely inoperative as liens. There was no proof offered in that case, and there has been none furnished in this case, to show that the original assessment ordinances were without authority or beyond the power of the municipality to enact. There has been, and there can be no claim that the original assessments prior to 1937 were in any way void or ineffective to bind unregistered land. There being no illegality about the original proceedings, the only matter preventing the operation of the assessments as liens on registered lands was the failure of the municipality to comply with the provisions of §8572-56 GC, prior to its repeal in 1937.

In the Adams case, the court declared:

"The assessments and reassessments in question are not invalid. They are merely inoperative as liens against the registered title of the former owner. These assessments and reassessments being valid, it was competent for the state in conveying title to the forfeited land to make the future installments thereof a lien upon the new title of plaintiff as purchaser at the tax sale. The statutes governing forfeited land sales apply with equal force to registered and unregistered lands alike."

See, to the same effect, the opinion of the court in **Village of Beechwood v. The F. B. Company et al, 15 O. O. 80** (affirmed by this court on December 16, 1940, 33 Abs 126; motion to certify overruled.) It is there stated with reference to the notice required by §8572-56 GC as follows:

"* * * There appears to be no provision of law which relates the serving of the notice therein provided to the legality of the assessment proceedings. The failure to serve the notice does not affect the legality of the assessment proceeding in any manner. It affects only the lien of such assessment * * *."

For the reasons indicated in the two cases from which we have quoted, the reassessment proceedings in the present case

are valid under §2293-5(k) and §2293-5(1) GC, and following, and §3902 GC is inapplicable, reassessment under the latter section being provided for only when the special assessment is "invalid, by reason of informality or irregularity in the proceedings, or when an assessment is adjudged to be illegal."

What we have heretofore stated appears to us dispositive of the present case. We shall, therefore, not attempt to analyze earlier Ohio cases cited in the briefs of counsel, decided prior to the amendment in 1945 of §5762 GC. In view of the more recent clarification of our statute law, evidenced in the repeal of §8572-56 GC, and the simultaneous amendment of §8572-25 and §8572-89 GC (117 Ohio Laws 479), followed shortly thereafter by the amendment of §5762 GC, we have found it unnecessary to rely for our decision on any theory of estoppel, even though aspects of such nature may be discernible. The extra-legal warning by the Auditor of possible pitfalls for his bargain basement customers was scarcely in this category, but it was a good deed in a confused world, not yet illumined by judicial decision. Courts of equity have sometimes stressed estoppel as a basis for their judgments when, realistically, they could as well admit an understandable reluctance toward aiding a litigant to receive something for nothing. where such assistance would thereby transfer a heavier burden to other taxpayers to absorb. On this subject, see Judge Morgan's comment in the case of **State ex rel F. B. Company v. Village of Beechwood, 37 Abs 366,** where he points out the increased burdens imposed upon the general taxpayer by special benefits when payment is not borne by the properties benefited.

For the foregoing reasons, a decree is entered for the defendants. Exceptions. Order see journal.

SKEEL, PJ, HURD, J, concur.